Terrence R. HOPKINS, an Individual,
Appellant,

and

Lyle W. Coddington, Jr., d/b/a Turf
'N Trail,

v.

JACOBSEN MANUFACTURING
COMPANY, Appellee.

No. 78–1397.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1978.

Decided Feb. 20, 1979.

Edward D. Hotz, Hotz, Kluver & Kizer, Omaha, Neb., for appellant.

William J. Brennan, Jr., Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for appellee.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

In this products liability action, plaintiff-appellant Terrence R. Hopkins appeals from a judgment entered by the district court [1] upon a jury verdict in favor of defendant-appellee Jacobsen Manufacturing Company (Jacobsen). Hopkins contends that two errors in the jury instructions require reversal: (1) the trial court failed to include an instruction on Jacobsen's continuing duty to warn users of its products about dangerous defects it discovers after selling the prod-

___

appropriate forum. *Cf. Northwest Airlines, Inc. v. Air Line Pilots Ass'n,* 442 F.2d 251, 255 (8th Cir. 1971).

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

ucts, and (2) the trial court submitted to the jury the defense of product misuse. Viewing the instructions as a whole, we find no reversible error and affirm.

During the winter of 1974–75, Hopkins was a parttime employee of Turf 'N Trail, a small business in Omaha, Nebraska, engaged in the sale and service of lawnmowers, snowblowers, and other machines. In addition to his work at the store, he and the owner, Lyle Coddington, had several snow-removal contracts. In December 1974, in order to facilitate his snow-removal work, Hopkins purchased a Jacobsen snowblower from Turf 'N Trail.

The accident underlying this litigation occurred on January 19, 1975, while Hopkins was clearing snow from a parking lot with the assistance of a friend, Charles Todd. At first Todd used the snowblower to clear the sidewalks while Hopkins cleared the lot with his truck and snowblade. Then, when Hopkins offered to switch, Todd told him that the snowblower was not discharging snow properly.

The remaining steps leading up to the accident are in dispute. According to Hopkins' testimony, he pushed the blower forward a few feet and discovered that no snow was coming out of the discharge chute. He then walked to the front of the machine and saw that the auger was not moving.[2] Next, he moved to the side of the machine, where he read the following warning:

DANGER
KEEP HANDS & FEET CLEAR
OF ROTATING OR MOVING
PARTS. STOP ENGINE & REMOVE
SPARK PLUG WIRE BEFORE
REMOVING OBSTRUCTIONS
OR MAKING ADJUSTMENTS.

Then he looked in the discharge chute and noticed some snow at the bottom. Wanting to clear away the snow, he turned the machine off, removed the spark plug and plunged his hand into the chute. The impeller was still rotating and mangled three of his fingers.

Thereafter, Hopkins filed the present action to recover damages based on strict liability and breach of warranty. At trial Coddington testified that Hopkins' snowblower had a defective worm and worm gear that allowed the auger to be stopped even though the impeller was still rotating.[3] In the opinion of Hopkins' expert, Herbert Egerer, that defect made the machine unreasonably dangerous because the operator reasonably could assume that the impeller had stopped along with the auger. Hopkins also presented evidence that Jacobsen knew that its snowblowers had defective worm and worm gears and yet had not issued warnings about any dangers arising from such defects.

Jacobsen, on the other hand, introduced circumstantial evidence tending to show that Hopkins' machine was not defective. In addition, Jacobsen maintained that, even if the worm and worm gear were defective, Hopkins was not endangered by that defect because he denied knowing of the existence of the impeller. Lacking that knowledge, Hopkins could not have acted on the assumption, suggested by his expert, that absence of movement in the auger meant that the impeller also was stopped. Finally, Jacobsen contended that Hopkins was barred from recovery due to his assumption of the risk and his misuse of the product.

At the conclusion of the trial, the jury rendered a general verdict in favor of Jacobsen, and the court thereafter entered a judgment dismissing the action. This timely appeal followed.

■ Hopkins' first contention on appeal is that the trial court erred in refusing to

---

**2.** The auger, made up of curved interconnected blades, breaks up the snow and feeds it back to an impeller with four vanes, which rotate quickly enough to cast the snow out through an almost-vertical discharge chute. The auger is visible from the front of the machine, but the impeller is hidden inside the machine. Normally, the auger and the impeller, which are connected by a worm and worm gear, rotate together.

**3.** The allegedly defective parts were not produced at trial.

include an instruction on Jacobsen's continuing duty to warn users of its products about dangerous defects it discovers after selling the products. Even though the district court rejected the instruction tendered by Hopkins on the continuing duty to warn, the court adequately presented that issue to the jury in the following language:

> You are instructed that a manufacturer who knows, or as a reasonable and prudent person should know, that its product involves unreasonable danger to users, has a duty to give warning of such dangers, whether or not the person using the product was the original purchaser.

The only other asserted error is the submission of the defense of product misuse to the jury. Over Hopkins' objection, the trial court gave the following instruction on product misuse:

> If plaintiff's injury occurred because of his use of the product in a manner for which the product is not adapted and not reasonably foreseeable to defendant, then the plaintiff cannot recover.

Hopkins concedes that this instruction correctly sets forth the general rule that "[a] manufacturer is not liable for injuries resulting from abnormal or unintended use of his product, *if* such use was not reasonably foreseeable." 1 Frumer and Friedman, *Products Liability* § 15.01 at 404 (1978) (emphasis in original). However, he contends on appeal that the instruction should not have been given because the evidence at trial negated an essential element of the product misuse defense—the lack of foreseeability of the misuse. He bases this contention on the testimony of a Jacobsen engineer, who acknowledged that most of the reported injuries from snowblowers occurred when the operator placed his hand in the discharge chute. From this testimony, Hopkins contends that, as a matter of law, his alleged misuse—putting his hand into the discharge chute when the impeller was rotating—was reasonably foreseeable to Jacobsen.

■ We need not address this challenge to the product misuse instruction because the specific objection raised on appeal was not presented to the trial court. Hopkins' objection at trial was simply that the evidence did not warrant an instruction on product misuse. Such a general objection, which fails to even hint at Hopkins' present argument that his misuse was foreseeable as a matter of law, is insufficient to preserve the point asserted by Hopkins on appeal. *See Wilson v. Crouse-Hinds Co.,* 556 F.2d 870, 875 (8th Cir.) (*en banc*), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); *Bender v. Wallace-Murray Co.,* 432 F.2d 50, 51 (8th Cir. 1970); *Boeing Airplane Co. v. O'Malley,* 329 F.2d 585, 597-98 (8th Cir. 1964).

Even if Hopkins' present objection to the product misuse instruction were properly before us, no error is demonstrated. Despite the testimony of Jacobsen's engineer, the district court in this case might well have left to the jury the issue of foreseeability on the product misuse claim. *Cf.* Frumer and Friedman, *supra,* § 8.03[1] at 163.

Accordingly, we affirm the judgment.